Miles N. Clark, Esq.
Nevada Bar No. 13848
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
Fax: (702) 552-2370
Email: miles@milesclarklaw.com

*Attorney for Plaintiff*
*Wendy Wells*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| WENDY WELLS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>AMERICAN EDUCATION SERVICES; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>　　　　Defendants. | Civil Action No.: 1:25-cv-00024<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Marion County, State of Indiana and because Defendants are subject to personal jurisdiction in Marion County,

State of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2).

## PARTIES

4.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

5.    Plaintiff Wendy Wells ("Plaintiff") is a natural person residing in Marion County, State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.    Defendant American Education Services ("American") is a corporation doing business in the State of Indiana.  American is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7.    Defendant Equifax Information Services, LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), and a nationwide consumer reporting agency under 15 U.S.C. § 1681a(p).  Equifax is a corporation which does business in the State of Indiana.

8.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

## FACTUAL ALLEGATIONS – FCRA VIOLATIONS

### *General Allegations, FCRA Liability, and Industry Reporting Guidelines*

9.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

10. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

11. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

12. Furthering the FCRA's goal of accuracy, a consumer may procure a "disclosure" of all information a reporting agency has stored on them under 15 U.S.C. § 1681g to, *inter alia*, review their information for inaccuracies or the presence of identity theft. To the extent Plaintiffs' creditors chose to furnish data to a Consumer Reporting Agency ("CRA"), such data, if accurate, is typically included in Plaintiffs' "consumer files," which the CRA must disclose to a consumer in a clear and accurate manner upon request. 15 U.S.C. § 1681g.

Section 1681g disclosures are "consumer reports" under the FCRA when they are acquired for free from nationwide consumer reporting agencies once during any 12-month period. *See* 15 U.S.C. § 1681j(a)(2); *see also id.* at § 1681a(p).

13.    The FCRA's protection provisions also permit consumers to dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a). Once notified of a dispute, a CRA must notify the source or furnisher of information, including all relevant information regarding the dispute the CRA received from the consumer. 15 U.S.C. § 1681i(a)(2).

14.    Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the CRA, conduct an investigation of the disputed item, and report the results of the investigation back to the CRA. 15 U.S.C. § 1681s-2(b). This reinvestigation must conclude no later than 30 days after submission of a consumer dispute, or 45 days if the dispute pertains to a Section 1681j(a) disclosure. *See* 15 U.S.C. § 1681i.

15.    If the furnisher's investigation yields results such that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

16.    If the CRA's reinvestigation (which necessarily includes the furnisher's investigation) finds the disputed information to be inaccurate, incomplete, or unable to be verified, then the CRA must either promptly delete that information or modify it, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

17.    The CRA must timely notify the disputing consumer regarding the results of the reinvestigation. 15 U.S.C. § 1681i(a)(6). As part of this notice of results of

reinvestigation, the CRA must provide a "consumer report." 15 U.S.C. § 1681i(a)(6)(B)(ii).

18. Whenever a reporting agency prepares a consumer report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). This obligation extends to both Section 1681g reports, 1681i(a)(6) reports, and any other consumer report fitting the definition contained in 15 U.S.C. § 1681a(d), whether sent to a consumer or any other party.

19. CRAs and furnishers also must comply with industry reporting guidelines from the Consumer Data Industry Association ("CDIA"), in the form of industry reporting standards called the "Consumer Reporting Resource Guide" or "Metro 2." The CDIA's standards are composed by only some credit-reporting stakeholders – i.e., reporting agencies and furnishers, but not consumers on whom data is reported – and as such their guidance often favors those parties at the consumers' expense. Nevertheless, courts have held that a furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted). *See also Wylie v. Experian, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

20. On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

21. Thus, the incomplete and inaccurate reporting provided to Plaintiffs as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

22. This is true both under Metro 2, and if Metro 2 does not apply. For example, even if Metro 2 does not apply, then Defendants were required to report historically accurate information, pursuant to 15 U.S.C. §§ 1681g, 1681e(b), 1681i and 1681s-2(b).

23. The inaccurate reporting provided to Plaintiffs as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

### *Plaintiffs' Bankruptcy Filings*

24. On or about March 8, 2024, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiffs' case was assigned Case Number 24-1074-JMC-7 ("Bankruptcy"). BK ECF No. 1.

25. At the time Plaintiff filed bankruptcy, she had incurred a student-loan obligation serviced by American, which was not subject to discharge, and her obligation was or should not have been modified by virtue of her bankruptcy filing.

26. On June 18, 2024, Plaintiff earned a bankruptcy discharge. *See* BK ECF No. 13. Plaintiff continues to make payments on the American obligation after bankruptcy.

- 6 -

***Procuring of Credit Reports and Submission of Disputes***

27.   Pursuant to Section 1681g, Plaintiff requested and received her consumer report from Equifax on August 16, 2024 ("Initial Credit Report").

28.   On September 30, 2024, and pursuant to Section 1681i, a written dispute letter for Plaintiff was sent to Equifax regarding disputes of accuracy of the American obligation, as specified below ("Dispute").

29.   In response to the Dispute, Equifax sent Plaintiff a Section 1681i(a)(6) consumer report comprising a reinvestigation of Plaintiff's disputed information on October 19, 2024 ("Reinvestigation").

30.   The Initial Credit Report and Reinvestigation were both "consumer reports" under 15 U.S.C. § 1681a(d), and also fell under than ambit of 15 U.S.C. § 1681g.

**AMERICAN FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)**

31.   Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

32.   On Plaintiff's Initial Credit Report, American inaccurately reported that her account was included in bankruptcy.  This reporting was inaccurate, as her account was a student loan not included or discharged in bankruptcy, and Plaintiff continues making payments on her American account.  The reporting was also materially misleading because this inaccuracy mistakenly suggested that Plaintiff had modified or discharged her account.

33.   In the Dispute Letter, Plaintiff placed American on notice of the applicable inaccuracies listed above, and requested that the information be corrected.

34.   Upon information and belief, upon receiving the Dispute, Equifax notified American of the dispute based on its mandatory statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

35.  American was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b).

36.  A reasonable investigation by American at any point following the Dispute would have indicated Plaintiff's American account was not included in bankruptcy, and should not be reporting either a derogatory bankruptcy notation or suppressed her payment history.

37.  However, American's update to the accounts were contradictory and incomplete in the aggregate.  On the Reinvestigation, American re-reported the derogatory bankruptcy notation.

38.  By failing to correct Plaintiff's information on her credit report, American ensured Plaintiff's information would continue to report inaccurately.

39.  This failure caused Plaintiff's consumer report to include materially misleading omissions, which in context created misperceptions about Plaintiff's dispositions of the debt owed to American.

40.  American repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

41.  American failed to review all relevant information provided by Plaintiff in the Disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

42.  Due to American's failure to reasonably investigate the Disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

43.    American's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful.   At minimum, American's conduct was negligent.

44.    Plaintiff has suffered concrete and imminent harm to creditworthiness.   Plaintiffs' Reinvestigation demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding Plaintiff's disputes, which on information and belief continued after the dispute should have been resolved.   Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.   Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

45.    Also as a result of American's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging American's inaccurate reporting, lost time, and damage to Plaintiff's creditworthiness.   American's incorrect reporting has also resulted in an increase in interest payments on the principal of her loan.   Plaintiff's credit reporting issues with American have also caused Plaintiff to suffer emotional distress in the form of fear of credit denials.   Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

46.    American's conduct at least negligent, but also willful.   Plaintiffs are, accordingly, eligible for statutory damages.

47. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**EQUIFAX FCRA VIOLATIONS – 15 U.S.C. §§ 1681E(B), 1681I, 1681G**

48. Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

49. Equifax failed to conduct a reasonable reinvestigation in violation of 15 U.S.C. § 1681i(a)(6) because a reasonable reinvestigation would have resulted in correction of the errors which Plaintiff had identified.  However, Plaintiff's Reinvestigation continued to report the derogatory bankruptcy notation.

50. Equifax's reporting on her Initial Credit Report was also objectively unclear and inaccurate to a reasonable consumer like Plaintiff, because it reported the account with a bankruptcy indicator.  This inaccuracy would have caused an ordinary consumer like Plaintiff to wonder whether her account had actually not been exempted from discharge.  Accordingly, Equifax violated 15 U.S.C. § 1681g.

51. On information and belief, Equifax's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports, because her bankruptcy and the disposition of accounts included therein was readily available in the public record and could have been easily verified by the company.  The inconsistency in reporting would not have occurred but for the absence of reasonable checks and balances to ensure consistent reporting of publicly available bankruptcy information.  This violated 15 U.S.C. § 1681e(b).

52. Plaintiff has suffered concrete and imminent harm to creditworthiness.  Plaintiffs' Reinvestigation demonstrated that numerous entities procured Plaintiff's consumer

reports during the period preceding Plaintiff's disputes, which on information and belief continued after the dispute should have been resolved.  Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

53.  Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Equifax's inaccurate reporting, lost time, and damage to Plaintiff's creditworthiness.  Plaintiff's credit reporting issues with Equifax have also caused Plaintiff to suffer emotional distress in the form of fear of credit denials. Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

54.  Equifax's conduct at least negligent, but also willful.  Plaintiffs are, accordingly, eligible for statutory damages.

55.  Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

//

//

//

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION – PLAINTIFF VS. AMERICAN
VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.S.C. § 1682S-2(B)**

56.    Plaintiff realleges all paragraphs above as if realleged herein.

57.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

58.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

59.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

60.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**SECOND CAUSE OF ACTION – PLAINTIFF VS. EQUIFAX
VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.S.C. §§ 168IE(B), 1681I, 1681G**

61.    Plaintiff realleges all paragraphs above as if realleged herein.

62.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, 1681g.

63.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

64.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

65.     Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the Court grant Plaintiff the following relief against each Defendant on Counts 1-2:

## FIRST AND SECOND CAUSES OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Huntington for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 6, 2025

Respectfully submitted,

/s/ *Miles N. Clark*
Miles N. Clark, Esq.
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700

*Attorney for Plaintiff*
*Wendy Wells*